## HOWELL et al. v. COUCH.

### No. 10150.

Circuit Court of Appeals, Fifth Circuit.

May 22, 1942.

Rehearing Denied July 2, 1942.

Francis G. Boswell, of Washington, D. C., and Otis Farrington, of Fort Lauderdale, Fla., for appellants.

Charles R. Fenwick, of Washington, D. C., and Hollis Rinehart, Jr., of Miami, Fla., for appellee.

Before SIBLEY, HUTCHESON, and McCORD, Circuit Judges.

SIBLEY, Circuit Judge.

The appellee Couch is a manufacturer of large volume low head pumps successfully used to put water on and take it off of dyked and drained lands in South Florida. The appellant formerly worked for him, but later engaged in furnishing similar pumps in the same territory. Couch owns a patent No. 1,893,614, issued Jan. 10, 1933, on a pump for such purposes. He asserts that Claims 1, 2, and 4 of that patent are infringed by what appellants are doing. They admit their pumps are quite similar to those sold by Couch, but say that neither is making the pump patented, or at all events their pump is not such, and they deny the validity of the patent. The District Court found the patent valid and infringed.

The patent disclosure speaks of a pump to raise much water only a few feet, as for irrigation or drainage, with the outlet of the pump submerged so as not to lift the water higher than necessary. It mentions several closable gates, by manipulating which, with the rotary pump always running in the same direction, one may reverse the flow of the water, either on or off the land. No patent is claimed on the pump member, but in connection with it the claims each describe a large housing around it, into and out of which the water flows without constriction. The housing is described as a vertical, cylindrical, barrel-like metal casing, with a diaphragm horizontally across it in an opening in which the pump member is placed, the part of the housing below the diaphragm being the intake area, and the part above being the discharge area. The housing communicates directly with the lower and upper reservoirs, ditches, or ˙canal, and constitutes part ˙of a dam between them, or several of them, and by opening and shutting the appropriate gates into the upper and lower parts of the housing the

water can be taken from and put into any desired canal. The commercial pumps do not have a cylindrical barrel, but usually a concrete box of a size large enough to dam the main canal, a horizontal deck of concrete in it for a diaphragm, and variously constructed and operated gates above and below. The great utility of the pump locally is that it can be made of large size, some handling 76,000 gallons per minute; and in time of drought can put large amounts of water from the drainage canal back on or into the cultivated lands, or in times of heavy rainfall can take the flood waters from the lands into the drainage canal before the crops are drowned.

Before this patent was conceived or applied for, Hoenshel Patent No. 1,737,372, filed May 31, 1928, was granted Nov. 26, 1929. It used a rotary pump for irrigation and drainage, and was adapted to produce a "reverse flow" by crossing the driving belt and thus reversing the motion of the pump. His housing was a vertical cylinder, but did not show multiple gates. Reverse flow for drainage and irrigation was thus not invented by Couch, though it is the feature most stressed by the testimony as to utility. Only the Couch housing and its means of control could be new. Grunow's Patent No. 901,238, Oct. 13, 1908, showed in connection with a rotary pump a large vertical cylindrical housing, with the pump resting on a sort of horizontal diaphragm, below which was the intake area and above it the outlet area, all very like Couch's patent in general outline. He shows gates instead of pipes for inlet and outlet. These patents are not anticipations, but they show that Couch's general ideas were not new. It was the details and special features on which his patent must have gone. It is on its face a combination patent, and in view of the prior art must be narrowly construed.

We do not give weight to the model and the public practice attributed to Anderson just prior to the time Couch claims to have made his invention. It rests substantially on Anderson's sole testimony, as to time, and his testimony was not by the trial judge who saw him considered convincing. To us also it seems vague and inconclusive.

Turning to the specific claims of Couch's patent, No. 1 and No. 4 each contains in the enumeration of the elements of its combination "guides extended above said diaphragm" or "fixed guide vanes in said conduit above and below the rotor". We do not see these in the exhibits illustrating appellants' pumps. In one of the exhibits the upper part of the concrete wall above the outlet gate is labelled "Guides extended above said diaphragm", but it plainly is no such thing, but only part of the housing wall. Claim No. 2, however, does not include these in its combination; it describes the housing as "columnar" rather than "cylindrical", and a column may be square as well as round. It mentions "slidable" gates to close the multiple openings, but we think the closing means used by appellants are mechanical equivalents. This claim seems to us to be infringed. There is difficulty in sustaining it because of its breadth, in view of the prior art, but we are convinced that Couch has made a practical advance by combining the things he did in his pump, and the presumption of validity of his patent has not been overthrown. Appellants are imitators merely. We sustain the validity of Claim No. 2, and the finding that it is infringed by appellants.

Judgment affirmed.